JEAN PAUL R. PROULX vs. STEVEN J. D'URSO.

No. 02-P-777.

Suffolk. October 9, 2003. - March 25, 2004.

Present: LAURENCE, GREEN, & TRAINOR, JJ.

*Easement. Real Property,* Easement.

In an action in the Land Court seeking a declaration of the parties' respective rights in a right of way across the plaintiff's property for the benefit of the defendant's property, the judge correctly ruled that the defendant had effectively agreed to the relocation of his easement, where the defendant had not only acquiesced in the plaintiff's acts of blockading and degrading to a state of impassability the original easement, despite the defendant's knowledge of his right to pass and repass over the easement, but where the defendant had affirmatively and willingly participated in the relocation process by further obstructing the original easement, actively improving the alternative right of way for his own benefit, and using that way as his exclusive access to and from his property for a decade. [704-705]

CIVIL ACTION commenced in the Land Court Department on February 19, 1999.

The case was heard by *Peter W. Kilborn,* C.J.

*Michael S. Lalikos* for the defendant.

*Donald F. Borenstein* for the plaintiff.

LAURENCE, J. In 1972, the appellee, Jean Paul R. Proulx, purchased two pieces of property in Boxford (shown as lots 4 and 4.1 on the attached plan). A right of way (shown as the "wood road" on the plan) had been established by deeds in the chain of title for the benefit of easterly adjoining lot 3. Proulx thereafter fenced off the wood road and rendered it impassible from the public way outlet, Lily Pond Road. He improved and used as his access from the public way a "gravel driveway" located east of and roughly parallel to the wood road. By the time the appellant, Steven J. D'Urso, acquired lot 3 in 1990, the wood road was inaccessible to his lot by virtue of the fencing

Proulx had erected. D'Urso, too, thereafter used and improved the gravel driveway to enter and exit his property.

The eventual development of contention between these neighbors led Proulx in 1999 to seek a declaration from the Land Court, pursuant to G. L. cc. 240 and 231A, of the parties' respective rights in the wood road and the gravel driveway. D'Urso answered, claiming the wood road as his rightful easement and counterclaiming for damages on account of Proulx's having "wrongfully deprive[d]" him of his rights thereto and on account of Proulx's allegedly unfair and deceptive conduct in blocking his access to the wood road and "spreading debris [thereon] . . . to camouflage its existence." A trial resulted in the dismissal of those counterclaims and a declaration that D'Urso had abandoned the easement over the wood road or, alternatively, had effectively agreed to the relocation of his easement to the gravel driveway. We agree with the judge's alternative holding and his dismissal of the counterclaims and, therefore, affirm the judgment.

1. *Material background.* The following factual findings by the judge are supported by the record and have not been challenged as clearly erroneous. See Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). Across Proulx's lots 4 and 4.1, together constituting 14 Lily Pond Road, there existed at the time of his 1972 purchase a right of way on the surface of the earth called the wood road, which provided access to and from Lily Pond Road for both Proulx's property and lot 3, known as 22 Lily Pond Road. An easement in the wood road had been granted by deed to D'Urso's predecessors in title.[1] The wood road was little more than an ungraded series of car tracks. At various places in the wood road Proulx dumped leaves, obscuring the tracks by covering low-lying and washed-out areas. Utility poles serving the properties had earlier been erected along the wood road.

By the time D'Urso acquired 22 Lily Pond Road — having been informed by his grantor that his access was over the wood road — Proulx had erected a fence over almost the entire front-

[1]The parties did not contest that an easement burdened Proulx's property for the benefit of the owner of lot 3; rather, they disputed its location and, alternatively, whether the easement had been abandoned or moved.

age of his property bordering Lily Pond Road. The fence blocked entrance to or exit from the wood road and left as the sole means of access to D'Urso's property from the public way a hard-packed path east of the wood road called the gravel driveway, which Proulx had not fenced off and which he used as his access. Over the years Proulx had improved the gravel driveway by clearing it of vegetation, adding fill, and grading it. Just after D'Urso acquired lot 3, Proulx installed another fence along the boundary line of their two neighboring properties, lots 4.1 and 3, thereby cutting off D'Urso's access to the wood road from any part of his lot. D'Urso never objected to either the fence that blocked his access to the wood road from the public way or the placement of the fence at the border of the two properties. Nor did he ever express to Proulx any concern over his inability to use the wood road to reach his property from the public way.

Indeed, subsequent to his purchase of 22 Lily Pond Road, D'Urso not only further rendered the wood road inaccessible by placing a large bush in its center where it crossed from Proulx's lot to his and by planting trees across it where it passed from his lot to lot 2, east of lot 3, but also made substantial improvements to the gravel driveway's condition on his own behalf by adding as many as ten truckloads of fill material, grading it, widening it, and making it more passable. He conceded that he considered the gravel driveway to be his "principal" access to his property (although the judge found that D'Urso did not in fact use and had never used the wood road or any other way for such access). D'Urso had desired to improve the gravel driveway even further by "hot-topping" it, but his proposal to do so was opposed by Proulx, who wanted it to remain a hard-packed "country road."

The judge noted that D'Urso's neighbor on the easterly side of his property, one Madden, had never seen D'Urso use the wood road except for one occasion, when he saw D'Urso venture onto it to take photographs shortly after the commencement of this litigation. Madden also testified that, as noted above, D'Urso had planted a row of hemlocks across the boundary of their adjoining lots so as to prevent any travel along the wood road at the point where it crossed into Madden's property.

Sometime in the 1990's, the utility poles along the wood road were condemned and had to be relocated. Proulx removed them and had the new ones placed alongside the gravel driveway, paying $800 to have a pole that had not been condemned replaced there as well. Proulx also removed a utility pole from D'Urso's property during this time, at D'Urso's request.

In 1996, the parties discussed the possibility of D'Urso purchasing part of Proulx's property adjoining his lot 3. When it appeared to D'Urso to be "a done deal," he temporarily took down the fence blocking entrance onto the wood road at the common boundary of the properties. The deal was never consummated, however, because D'Urso did not want to allow Madden to use the wood road, a condition of the sale.

2. *Discussion.* Without deciding whether D'Urso is correct in asserting that the judge's unchallenged subsidiary findings do not support the ultimate finding of D'Urso's abandonment of the wood road easement,[2] we nevertheless agree with Proulx that the findings in any event support the judge's alternative basis for the judgment; namely, that D'Urso "by his actions acquiesced in the change in location," and by his conduct "accepted" — i.e., implicitly agreed to — the easement's relocation.

The owner of a servient estate in Massachusetts may not

---

[2] We note, however, that, while the burden on the owner of a servient estate to establish an intent to abandon an easement by the owner of the dominant estate is heavy — mere nonuse is insufficient and the latter's acts must clearly manifest such an intention, *Willard* v. *Stone*, 253 Mass. 555, 561-562 (1925) — that rigorous standard is not insurmountable. Any deliberate conduct on the part of the dominant owner inconsistent with the continued existence of the easement may operate as abandonment, which has been found in a number of cases not substantially dissimilar to this one. See, e.g., *King* v. *Murphy*, 140 Mass. 254, 255-256 (1885); *Lund* v. *Cox*, 281 Mass. 484, 492 (1933); *Sindler* v. *William M. Bailey Co.*, 348 Mass. 589, 592-593 (1965); *Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383, 390-391 (1992). Cf. *Yagjian* v. *O'Brien*, 19 Mass. App. Ct. 733, 735-736 (1985) (servient owner's erection of fence preventing passage over easement is actionable unprivileged interference with dominant owner's rights that can lead to extinguishment of easement unless facts indicate latter's permission). Contrast *Lemieux* v. *Rex Leather Finishing Corp.*, 7 Mass. App. Ct. 417, 421 (1979) (dominant owner prevented inference of intent to abandon easement, blocked by gates installed by servient owner except during business hours for commercial purposes, by symbolic act of driving vehicle over way at least once each year).

unilaterally alter or move a dominant owner's easement actually located on the ground. See *Anderson* v. *DeVries*, 326 Mass. 127, 132 (1950), and cases cited. However, the original easement may be deemed relocated when the conduct of the parties is such as to permit a conclusion that a different easement had "been substituted for the way mentioned in the deeds" because the evidence reflects "a tacit understanding or an implied agreement," manifested by the dominant owner's "acquiescence" in the use of the different easement in lieu of the original for a number of years. *Id.* at 132-133. See *Davis* v. *Sikes*, 254 Mass. 540, 546-547 (1926); *Desotell* v. *Szczygiel*, 338 Mass. 153, 158 (1958) (involving acquiescence in and use of relocated way for only six years).

The present case appears an even stronger one than in previous situations for upholding the finding of an implicitly agreed relocation of the easement. The facts found by the judge reveal not merely passive acquiescence on the part of the dominant owner (D'Urso) in the acts of the servient owner (Proulx) in blockading and degrading to a state of impassability the original easement (the wood road), despite the dominant owner's knowledge (and explicit notice from his predecessor in title) of his right to pass and repass over the wood road; more significantly, they demonstrate the dominant owner's affirmative and willing participation in the relocation process by further obstructing the original easement, actively improving the alternative right of way for his own benefit, and using that way as his exclusive access to and from his property for a decade. On this record and the authorities just cited, the trial judge did not err in finding that D'Urso had by his actions "acquiesced in" and "accepted" the change of location of the easement to the gravel driveway. Because D'Urso thereby suffered no wrongful deprivation of any rights, the judge correctly dismissed his claim for damages.[3]

*Judgment affirmed.*

[3]At oral argument, D'Urso withdrew his challenge to the correct ruling by the judge (who had been designated a Superior Court judge for the purpose of deciding the count alleging unfair and deceptive practices) that no violation of G. L. c. 93A, § 2, could have occurred because Proulx was not engaged in the conduct of any "trade or commerce."