STUART, Justice.
The Bella Luna Condominium Owners Association, Inc. (“the BLCOA”), filed an action in the Baldwin Circuit Court seeking a judgment declaring a beach-access easement to be valid and enforceable and enjoining the Perdido Place Condominium Owners Association, Inc. (“the PPCOA”), from obstructing that easement. The PPCOA filed a counterclaim seeking a judgment declaring the easement void. Following a bench trial, the trial court entered a judgment in favor of the BLCOA and held the easement valid, though subject to certain restrictions. The PPCOA appeals. We affirm.
I.
In March 1999, David Cummans and James L. Brown conveyed certain gulf-front property that they owned in Orange Beach to Perdido Place, LLC, a limited-liability company operated by Cummans. Perdido Place, LLC, thereafter developed the property into the 44-unit condominium complex known as Perdido Place, which officially became a condominium on October 19, 2000, pursuant to the Alabama Uniform Condominium Act, § 35-8A-101 et seq., Ala.Code 1975. The units at Per-dido Place are restricted to use by the owners; they cannot be rented. Perdido Place is managed by the PPCOA.
At the time Perdido Place was being planned, Cummans also owned a one-acre lot immediately north of the Perdido Place property on the opposite side of Highway 182. On April 2,1999, Cummans conveyed that lot to P & C Properties, LLC (“P & C”). That same day, P & C also purchased from Fudpuckers of Orange Beach, Inc., 2.5 acres of property immediately adjacent to the 1-acre lot purchased from Cummans. Also that same day, Perdido Place, LLC, conveyed to P <& C a pedestrian beach-access easement five feet wide across the eastern boundary of the Perdi-do Place property. The deed conveying that easement stated that it was appurtenant to the one-acre lot P & C purchased from Cummans that same day.
In April 2002, P & C created a two-lot subdivision known as Legacy Surf on the property it had purchased from Cummans and Fudpuckers in April 1999. Because of the way the lots were divided, each lot included portions of the property purchased from Cummans. P & C thereafter conveyed one of the lots to Legacy Towers Partnership and conveyed the other lot to Gulf Coast Surf, Inc. Legacy Towers and Gulf Coast Surf each subsequently conveyed their lots to TMG, LLC, which, on April 28, 2004, conveyed both lots to Bella Luna, LLC. The deeds recording each of the above transactions purported to convey not only the property, but also the easement over the Perdido Place property. However, Bella Luna, LLC, was notified by an attorney before it obtained the lots from TMG, LLC, that there was a poten *1203 tial problem with the easement. Specifically, the attorney advised Bella Luna, LLC, in a letter to amend the offering statement it proposed to give purchasers of condominiums in the development it planned for the property to acknowledge that potential problem:
“As we had discussed in our conference with Gulf Shores Title, the pedestrian easement for ingress and egress as described in the deeds conveying title to TMG, LLC (predecessor to Bella Luna, LLC) [was] appurtenant to only 100 feet of your 350-foot parcel of property. This creates a potential problem with regard to the availability of access over the described 5-foot parcel.
“The issue which may be raised is one of ‘over-burdening of use.’ Each owner of the proposed condominium units will have an undivided interest in the property appurtenant to the easement. You and your successors however, may not increase the servitude imposed on the property over which the easement may run. The question arises as to whether or not the increase in the number of persons using an unlimited right of way easement is an unlawful additional burden on the servient estate. The answer to this question would need to be [addressed], if the question ever arose, by looking at the factors which would come into play to determine whether the use would be deemed to be reasonable and proper use, with circumstances to be considered including: local situations, the nature and condition of the premises over which the way is granted; the manner in which it is used; and the purpose which the parties had in due [sic] at the time the easement was created.
“I am not stating in this letter that there is no easement, I am just bringing this to your attention and would recommend that all of this be brought to the attention of each of your potential purchasers. They can each then get their own independent opinion from their attorney, if they have any specific concerns.”
On July 21, 2006, Bella Luna, LLC, filed a declaration of condominium for the property, and, in March 2007, it completed construction of a 128-unit development known as Bella Luna. The tower itself is partially located on the lot formerly owned by Cummans, as are certain common areas of the complex. Each purchaser of a condominium in Bella Luna was required to acknowledge in writing that the legal status of the easement across Perdido Place was unknown. Bella Luna is managed by the BLCOA, and approximately 30 of the units are part of a rental program.
In 2006, while Bella Luna was still under construction, the PPCOA installed a fence along the perimeter of the Perdido Place property, effectively blocking any use of the easement in question. Shortly after Bella Luna was completed in March 2007, the members of the BLCOA board realized that the easement had been permanently blocked. The BLCOA then contacted the PPCOA in an attempt to open access to the easement; however, after expressing concern about renters from Bella Luna using the easement and the possibility of overburdening the beach in front of Perdi-do Place, the PPCOA declined to remove the fence. Accordingly, the BLCOA instituted this action in the Baldwin Circuit Court on August 28, 2007.[1]
*1204 A two-day bench trial was held in June 2008. On August 14, 2008, the trial court entered the following judgment in favor of the BLCOA:
“The court having tried this case June 26 and June 30, 2008, and having considered the oral testimony and other evidence presented as well as the parties’ arguments, the court finds in favor of [the BLCOA] and against [the PPCOA], The court finds that no overburdening of the easement has occurred, as there has been no significant change in use of the easement from that contemplated by the parties (including the owner of the ser-vient estate) at the time the easement was created. The parties at that time contemplated that the easement would benefit a condominium constructed on both of the parcels of property on which Bella Luna Condominium is now located. In addition, the court has balanced the equities and applied the comparative-injury doctrine and finds that even if some overburdening had occurred (which, again, the court finds it has not), the court should nonetheless allow [the BLCOA] to use the easement. The court further finds, however, that certain restrictions on [the BLCOA’s] use of the easement are appropriate and will be imposed.
“Accordingly, the court hereby enters judgment in favor of [the BLCOA] and against [the PPCOA]. The court ORDERS, ADJUDGES, and DECREES that the [BLCOA] beach-access easement is valid and enforceable; that [the BLCOA] is entitled to use of the easement; that [the PPCOA] is enjoined from obstructing the easement and is ordered to immediately remove its obstructions; that [the BLCOA’s] use of the easement shall be limited to owners (as opposed to renters) of Bella Luna condominium units and guests of Bella Luna unit owners; and that [the BLCOA] shall be responsible for maintenance of the easement, specifically, keeping the easement clear of waste or debris and maintaining any existing or future path, walkway, or boardwalk located on the easement.”
The PPCOA subsequently moved the trial court to alter, amend, or vacate its judgment or, in the alternative, to grant it a new trial; however, the trial court denied that motion on October 21, 2008. On November 10, 2008, the PPCOA filed its notice of appeal to this Court.[2]
II.
This case was decided by the trial court without a jury.
“ Where evidence is presented to the trial court ore terms, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’ ”
Pollard v. Unus Props., LLC, 902 So.2d 18, 23 (Ala.2004) (quoting American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997)). However, “[t]he presumption of correctness accorded a trial court’s judgment following a bench trial where evidence is presented ore tenus does not extend to its decisions on questions of law.” Bon Aventure, L.L.C. v. Craig Dyas L.L.C., 3 So.3d 859, 862 (Ala.2008).
*1205 III.
The PPCOA’s argument on appeal is based almost entirely on a statement this Court made in Weeks v. Wolf Creek Industries, Inc., 941 So.2d 263 (Ala.2006). In Weeks, the Walker family had conveyed all the property it owned on the west side of a creek known as Spring Branch in Baldwin County to one party, while reserving an easement across that property for the benefit of land they still owned east of Spring Branch. The Walkers subsequently subdivided that property east of Spring Branch multiple times, and it was sold and resold numerous times over the course of approximately 60 years. Eventually the land west of Spring Branch came to be owned by the Weeks family, and a significant portion of the property east of Spring Branch was purchased by Wolf Creek Industries, Inc., a developer, who combined the property for the development of a mixed-use condominium development known as “The Commons,” consisting of 46 single-family units, 2 duplex units, and 4 commercial units. The Weekses objected to the use of the easement by this new development and subsequently sought a declaration by the Baldwin Circuit Court that neither Wolf Creek nor owners in The Commons had the right to use the easement. This Court ultimately affirmed the judgment of the trial court that Wolf Creek and the owners in The Commons were entitled to use the easement, holding that even though the easement was not specifically referenced in the chain of title to most of the property making up The Commons, when the easement was created it was intended to benefit all the land owned by the Walkers east of Spring Branch and “[e]ach subsequent subdivision of the dominant tenement was benefited, as a matter of law, by the easement.” Weeks, 941 So.2d at 271.
After deciding that issue, the Court further considered the Weekses’ argument that use of the easement by The Commons would overburden the Weekses’ property. After listing the factors relevant to whether a servient estate has been overburdened, the Court then made the following statement upon which the PPCOA bases its appeal:
“Moreover, the use of the easement by owners of property other than a subdivision of the dominant tenement — even property acquired by the dominant-tenement owner after creation of the servitude — overburdens the servient estate as a matter of law. Il Giardino, LLC v. Belle Haven Land Co., 254 Conn. 502, 516, 757 A.2d 1103, 1113 (2000); [John W.] Bruce & [James W.] Ely[, Jr., The Law of Easements and Licenses in Land ], ¶ 8.03[2] [ (1995) ]; see also Watson v. Lazy Six Corp., 608 So.2d 389 (Ala.1992); Loveman v. Lay, 271 Ala. 385, 124 So.2d 93 (1960); and McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 664 N.E.2d 786 (1996).”
941 So.2d at 272. The PPCOA argues that more than two-thirds of the property constituting the Bella Luna development is “property acquired by the dominant-tenement owner after creation of the servitude” and that, pursuant to the above statement from Weeks, Perdido Place would therefore be overburdened as a matter of law if the BLCOA is allowed to use the beach-access easement that is appurtenant only to the westernmost acre of the approximately 3.5 acres making up the Bella Luna property.
The BLCOA, however, argues that the statement in Weeks upon which the PPCOA relies is dicta because, it argues, Weeks did not actually involve the use of an easement to benefit property outside the originally defined dominant tenement. Moreover, the BLCOA argues, Bella Luna unit owners not only own some property *1206 that is, admittedly, outside the original dominant tenement — that is, the land acquired from Cummans — but each unit owner also owns an undivided interest in the land acquired from Cummans to which the easement is appurtenant. We agree that that fact is an important distinction.
The statement in Weeks upon which the PPCOA relies may be dicta; nevertheless, it is an accurate statement of the law. It has ample support in other caselaw, including Loveman v. Lay, 271 Ala. 385, 392, 124 So.2d 93, 99 (1960), which is cited in Weeks. This Court has previously summarized Loveman as follows:
“In Loveman v. Lay, supra, a dominant estate owner had an easement over the properties of two servient estate owners. The dominant estate owner also owned a piece of land adjoining and abutting his dominant estate, but not adjacent to the easement. The dominant estate owner allowed the easement to be used to benefit his property adjoining and abutting the dominant estate by allowing coal to be brought in over the easement to heat the buildings on the land adjoining and abutting the dominant estate. The servient estate owners sought injunctive relief, and this Court determined that ‘the hauling of coal over the [easement] for the purpose of heating the building or buildings west of the [dominant estate] should be enjoined,’ 271 Ala. at 393, 124 So.2d at 99, because, ‘[i]f the [easement] is for the benefit of some particular land[,] it can not be used to accommodate some other tract of land adjoining or lying beyond.’ 271 Ala. at 392, 124 So.2d at 99.”
Phillips v. Waier Works & Sewer Bd. of Anton, 27 So.3d 1206, 1209-10 (Ala.2009). However, the instant case differs from Loveman inasmuch as it is impossible to state that any use of the beach-access easement by Bella Luna owners would not be for the benefit of property within the dominant tenement. As already noted, the Bella Luna owners all have an undivided ownership interest in the Bella Luna common areas, and it is undisputed that some of those common areas are located on the tract of land originally conveyed by Cum-mans to P & C and to which the easement is appurtenant. Moreover, it is readily apparent from the pictorial evidence submitted that the actual condominium tower traverses both the land formerly owned by Cummans and the land formerly owned by Fudpuckers, so even some individual units likely overlap both properties. Thus, while it was possible in Loveman to state conclusively that the disputed use of the easement was prohibited because that use clearly was for the sole benefit of property outside the dominant tenement, we cannot do the same in this case because each use of the disputed beach-access easement by a Bella Luna unit owner would clearly not be for the sole benefit of property outside the dominant tenement. Rather each owner’s use would necessarily be for the benefit of that owner’s parcel of property— which parcel is made up of both the owner’s individual unit as well as that owner’s interest in the common areas, some of which are within the dominant tenement. Accordingly, we cannot say that the use of the beach-access easement by the BLCOA overburdens the servient estate, i.e., Perdi-do Place, as a matter of law.
 Of course, although we are holding that the BLCOA’s use of the beach-access easement does not constitute overburdening as a matter of law, the PPCOA may still assert, as a factual matter, that there has been overburdening. In that case, it would be the PPCOA’s duty to prove overburdening. See Weeks, 941 So.2d at 271-72 (“ ‘[T]he owner of the ser-vient estate [ordinarily] has the burden of *1207 proving overburdening because the ser-vient owner has asserted overburdening as a cause of action or as a reply to a special defense of an easement when the purpose of the easement is not in dispute.’ ” (quoting Zhang v. Omnipoint Commc’ns Enters., Inc., 272 Conn. 627, 640 n. 8, 866 A.2d 588, 596 n. 8 (2005))). Factors relevant to making a showing of overburdening include: (1) evidence of an abrupt change in the development of the dominant estate and its use of the easement; (2) a decrease in the property value of the ser-vient estate as a result of the use of the easement; (3) an increase in noise and traffic along the easement so as to interfere with the servient owner’s peace and enjoyment of the land; and (4) physical damage to the servient estate. Weeks, 941 So.2d at 272. However, the trial court in this case specifically rejected the PPCOA’s assertion of overburdening, stating: “The court finds that no overburdening of the easement has occurred, as there has been no significant change in use of the easement from that contemplated by the parties (including the owner of the servient estate) at the time the easement was created.” This finding is supported by the evidence in the record, including testimony from a developer who was in business with P & C — which originally obtained the one-acre parcel from Cummans and the easement from Perdido Place, LLC — who stated that he had discussed his development plans with Cummans and specifically had discussed beach access for the Fudpuckers property by way of the easement across Perdido Place. There was also testimony from multiple real-estate professionals stating that there would be no negative impact on Perdido Place if the easement was opened up for use by the BLCOA. In light of this ore tenus evidence, we cannot say that the trial court’s finding that there has been no overburdening is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. See Pollard, 902 So.2d at 23.
IV.
The BLCOA filed a declaratory-judgment action in the Baldwin Circuit Court asking that court to enter a judgment declaring a beach-access easement valid and enforceable and enjoining the PPCOA from obstructing that easement. The PPCOA filed a counterclaim arguing that the easement should be declared void because the BLCOA’s use of it would, the PPCOA alleged, overburden Perdido Place. However, the trial court rejected the PPCOA’s argument, found that there was no overburdening, and entered a judgment declaring the disputed beach-access easement valid and enforceable. Because that judgment is supported by both the law and the facts in the record, it is hereby affirmed.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, J., concurs specially.
MURDOCK, J., dissents.

. In order to secure beach access while this action was pending, the BLCOA entered into an agreement with the Grand Key Riverside, a beachfront development on the south side of Highway 182 approximately 50-75 yards east of Bella Luna. Pursuant to that agreement, the BLCOA agreed to pay Grand Key Riverside approximately $2,000 a month and to *1204 allow Grand Key Riverside owners to use the amenities at Bella Luna in return for permission to traverse Grand Key Riverside property to access the beach.

. The BLCOA has not filed a cross-appeal, and it does not otherwise challenge the restrictions the trial court placed upon its use of the easement.