NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11963

HUGH C. TAYLOR, trustee,[1] & others[2] vs.  MARTHA'S VINEYARD
LAND BANK COMMISSION.


Suffolk.     March 8, 2016. - October 11, 2016.

Present:  Gants, C.J., Spina, Cordy, Duffly, Lenk, & Hines, JJ.[3]


Easement.  Real Property, Easement.  Martha's Vineyard Land Bank
     Commission.



     Civil action commenced in the Land Court Department on June
9, 2010.

     A motion for summary judgment was heard by Alexander H.
Sands, III, J., and the remaining issues were also heard by him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Diane C. Tillotson for the defendant.
     Gordon M. Orloff for the plaintiffs.
     Jeffrey T. Angley & Nicholas P. Shapiro, for Roma III,
Ltd., amicus curiae, submitted a brief.

_____

     [1] Of Taylor Realty Trust.

     [2] Jeanne S. Taylor and Brian M. Hurley, as trustees of
Taylor Realty Trust.

     [3] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

    Greg D. Peterson, Mark S. Furman, & Matthew S. Furman, for
Sarah A. Kent, amicus curiae, submitted a brief.


    LENK, J.  The defendant, Martha's Vineyard Land Bank
Commission, owns and manages a nature preserve on the western
edge of Martha's Vineyard.  The preserve is comprised of various
parcels of land that the defendant purchased in the 1990s.
In 2010, the defendant created a hiking trail through the
preserve, which it planned to open to the public.  The trail
began on a main road, crossed over the grounds of an inn owned
by the plaintiffs via a forty-foot wide easement, proceeded from
there across three parcels of the defendant's land for whose
benefit the easement was created, and then entered a fourth
parcel, also owned by the defendant, that was not intended to
benefit from the easement.  The plaintiffs filed an action in
the Land Court to prevent the defendant from using the easement
as part of the hiking trail.  They argued, among other things,
that it was improper, pursuant to Murphy v. Mart Realty of
Brockton, Inc., 348 Mass. 675 (1965), for the trail to cross
over the easement and then continue onto the fourth parcel,
given that the easement was not intended to serve that parcel.
On this basis, a judge of the Land Court granted partial summary
judgment for the plaintiffs.  Following a bench trial, at which
certain remaining issues were resolved in the defendant's favor,
the defendant appealed from the grant of partial summary

judgment, and we allowed its application for direct appellate review.[4]

The defendant contends that the bright-line rule in Murphy, disallowing any use of an easement to benefit land to which the easement is not appurtenant,[5] is overly rigid. The defendant suggests that, instead, this court should adopt a fact-intensive inquiry requiring consideration whether the use of a particular easement to benefit other parcels would increase unfairly the burden on the easement. We conclude that the benefits of preserving the long-standing, bright-line rule set forth in Murphy outweigh any costs associated with its rigidity, and therefore decline to adopt the defendant's suggestion. Accordingly, we affirm the judgment of the Land Court.

1. Background. Martha's Vineyard Land Bank Commission "was established in 1985 by a special act of the Legislature . . . for the purpose of acquiring land for environmental protection, conservation, and managed public use." It owns and manages, among other properties, the Aquinnah Headlands Preserve, a nature preserve on the western edge of

_____

[4] We acknowledge the amicus brief submitted by Roma III, Ltd., on behalf of the defendant, and the amicus brief of Sarah A. Kent.

[5] An easement "appurtenant" is one created for the benefit of a particular parcel of land; the right to use it is "tied to ownership or occupancy of [that] particular unit or parcel of land." Restatement (Third) of Property: Servitudes § 1.5 (2000).

Martha's Vineyard located atop the Gay Head Cliffs.  The preserve contains a series of hiking trails, which are open to the public annually during the tourism off-season, from September 15 through June 15.

In the early 1990s, the defendant assembled what is now the preserve by purchasing a series of parcels on the Gay Head Cliffs.  Four of these parcels are relevant here.  From south to north, these adjacent parcels are referenced by the parties as Ginnochio Lot 1,[6] Vanderhoop Parcel, Ginnochio Lot 2, and Diem Lot 5.[7]  None of the four parcels abuts the nearest public way, Lighthouse Road, which runs to the south of the properties.  A separate parcel, however, located to the southeast of the defendant's properties, connects Ginnochio Lot 1 to Lighthouse Road.  That parcel, owned by the plaintiffs, is registered land known as the Inn Property.  It contains a small hotel with seven guest rooms that is open only during the tourism season, approximately from mid-May through Columbus Day weekend.

The defendant's parcels benefit from two easements that burden the Inn Property.  Those easements, which were created before the defendant purchased the parcels that now comprise the

---

[6] The parties do not dispute that the defendant holds title to Ginnochio Lot 1, but the Land Court judge noted in his decision that it is unclear whether this is so.

[7] All of the defendant's parcels at issue, with the exception of the Vanderhoop Parcel, are registered land.

preserve, provide access to and from Lighthouse Road.  Neither

of the easements is appurtenant to all four of the parcels.  The

first easement, a forty-foot wide road referred to in the Land

Court proceedings and by the parties here as the Disputed Way,

is appurtenant to and serves the three southern parcels

(Ginnochio Lot 1, Vanderhoop Parcel, and Ginnochio Lot 2).  The

other easement, called Twenty-Foot Way, is appurtenant to and

serves Diem Lot 5, the northernmost property.[8]

In May, 2010, the defendant received approval from various

government agencies to implement a "Management Plan"[9] that called

for creating a hiking trail on the preserve.  The proposed trail

would incorporate Disputed Way and Twenty Foot Way in a single

loop.  The trail would extend along the full length of Disputed

---

[8] Both Disputed Way and Twenty-Foot Way "originat[e] at
Lighthouse Road" and "cross[ north onto] the Inn Property."
(One document in the record suggests that Disputed Way actually
originates south of Lighthouse Road, but the Land Court judge
credited other documents that "do not depict any portion of the
Disputed Way south of Lighthouse Road.")  From there, Disputed
Way branches northwest, crossing onto Ginnochio Lot 1,
Vanderhoop Parcel, and, finally, Ginnochio Lot 2.  Twenty Foot
Way, on the other hand, "branches off of the Disputed Way . . .
and runs northeasterly across the Inn Property" onto another
parcel owned by the plaintiffs.  From there, it crosses onto two
other parcels owned by neither party and "intersects with"
another easement, "which . . . access[es] Diem Lot 5."

[9] "Management plans" are the official name for land-
management projects proposed by the defendant.  They may be
carried out only after a public hearing, and require approval
from the Gay Head town advisory board and the Secretary of the
Executive Office of Energy and Environmental Affairs, a State
agency.

Way, "begin[ning] at Lighthouse Road, proceed[ing] northwesterly over [the Inn] Property, then over Ginnochio Lot 1, . . . and the Vanderhoop Parcel," and "terminating on Ginnochio Lot 2." From there, the trail would run north into Diem Lot 5, and ultimately intersect with Twenty Foot Way. Then, via Twenty Foot Way, the trail would return to its point of origin near Lighthouse Road.

In June, 2010, the plaintiffs filed a complaint in the Land Court seeking a declaratory judgment that the defendant could not use Disputed Way as part of the proposed hiking loop. Among other things, the plaintiffs argued that, because the Disputed Way easement was appurtenant only to Ginnochio Lot 1, Vanderhoop Parcel, and Ginnochio Lot 2, the three southern parcels, the defendant was not entitled to use it as part of a trail that reached Diem Lot 5.[10] The plaintiffs also argued that opening Disputed Way to the public, even without a continuation onto Diem Lot 5, would overburden[11] the easement.

---

[10] They did not dispute, though, that Twenty Foot Way was meant to serve Diem Lot 5.

[11] We "use[] 'overburden' to describe only use of an easement for a purpose different from that intended in the creation of the easement, [and] 'overload' to describe the situation . . . where an appurtenant easement is used to serve land other than the land to which it is appurtenant." Southwick v. Planning Bd. of Plymouth, 65 Mass. App. Ct. 315, 319 n.12 (2005).

In March, 2011, the plaintiffs filed a motion for summary judgment. A Land Court judge granted the motion in part, concluding, among other things, that incorporating Disputed Way into a hiking trail that reached Diem Lot 5 would overload the Disputed Way easement and, accordingly, that any trail passing over Disputed Way must terminate before crossing onto Diem Lot 5. This effectively divided the proposed hiking loop into two separate trails, the first from Lighthouse Road to Ginnochio Lot 2 via Disputed Way, and the other from Lighthouse Road to Diem Lot 5 via Twenty-Foot Way. While hikers could make use of both trails, they would not be able to do so in a single loop.

The judge also concluded, however, that there was a genuine issue of material fact whether, among other things, opening the easement to the public would unreasonably increase pedestrian traffic on the Inn Property and thereby overburden the easement. The judge conducted a trial on that issue, and concluded that opening Disputed Way to members of the public would not overburden the easement. He noted that "such use comports to the [original] scope of the easement" and that the defendant proposed only "limited use of the Disputed Way by the public."

The defendant filed a notice of appeal. The notice specified that the defendant was challenging only the Land Court's decision on summary judgment, i.e., the ruling that Disputed Way could not be used to benefit Diem Lot 5. The

defendant then filed an application in this court seeking direct appellate review; that application was allowed.

2. Discussion. We have long held that a "right of way appurtenant to [a particular piece of] land . . . cannot be used by the owner of the dominant tenement to pass to or from other land adjacent to or beyond that to which the easement is appurtenant."[12]  See Murphy, 348 Mass. at 678-679.  See, e.g., McLaughlin v. Selectmen of Amherst, 422 Mass. 359, 364 (1996) (easement may not be used to serve estate to which not appurtenant); Davenport v. Lamson, 21 Pick. 72, 74 (1838) (it is "well settled by the authorities, that if a [person] have a right of way over another's land, to a particular close, he [or she] cannot enlarge it and extend it to other closes");. "[A]bsent . . . consent [from the owner of the servient estate], use of an easement to benefit property located beyond the dominant estate constitutes an over[load]ing of the easement" (citation omitted).  McLaughlin, supra at 364.

This limitation on the permissible use of easements is a bright-line "rule [meant to] avoid[] otherwise difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate," and, consequently,

---

[12] "A dominant estate is an estate that benefits from an easement . . . ."  Cater v. Bednarek, 462 Mass. 523, 524 n.5 (2012).  "A servient estate is an estate burdened by an easement."  Id.

applies "even if no additional use of the easement or burden on the servient estate would ensue." Restatement (Third) of Property: Servitudes § 4.11 comment b (2000) (Restatement of Property). Here, the parties do not dispute that, under this long-standing rule, the defendant would be prohibited from using Disputed Way to access a parcel the easement was not intended to benefit, i.e., Diem Lot 5.

The defendant suggests, however, that this court adopt a new rule that would replace the bright-line test described in Murphy with a fact-based inquiry.[13] The inquiry would consider "whether use of an easement by an adjacent parcel would place additional burden on the servient estate," and, if so, whether

---

[13] The defendant suggests also that we might limit application of the traditional rule to those cases where, unlike here, use of an easement to benefit other parcels would result in a significant additional burden to the servient estate. Contrast Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 678-679 (1965) (owner of dominant estate enjoined from using easement appurtenant to one lot for commercial access to large discount store and parking lot located on other parcels). As the Land Court judge correctly noted, however, the relevant precedents are "clearly based on [an] established rule, and not based on unique facts."

The defendant also requests that, even if we affirm the traditional bright-line rule, trial court judges should be encouraged not to issue injunctions enforcing it. See, e.g., Rhett v. Gray, 401 S.C. 478, 496 (Ct. App. 2012) (if "the additional burden is relatively trifling, the user will not be enjoined" [citation omitted]). We decline this invitation; an "injunction is an appropriate remedy to enjoin repeated trespasses, even though no substantial damage is thereby incurred by the landowner." Doody v. Spurr, 315 Mass. 129, 134 (1943).

such additional use "unfairly burden[s] the servient estate . . . in a manner beyond the scope of that intended" in the original grant.  This proposed test is the functional equivalent of that used by courts in determining whether the owner of a dominant estate has overburdened an easement by changing the "manner, frequency, [or] intensity of the use." See Restatement of Property, supra at § 4.10.  See, e.g., Marden v. Mallard Decoy Club, Inc., 361 Mass. 105, 107 (1972) ("easement granted in general terms is . . . available for all reasonable uses to which the dominant estate may thereafter be devoted"); Labounty v. Vickers, 352 Mass. 337, 345 (1967) ("The question as to the extent and limits of a reasonable right of way . . . [is] largely one of fact . . ."); Restatement of Property, supra at § 4.10 comment c ("Resolution of the conflict [over changed use] often demands a detailed inquiry into the particular facts and circumstances of the case, and the issues as to intent, reasonable expectations, purpose, reasonableness of use, and extent of damage and interference are usually intertwined").  Under this test, the defendant contends, use of the Disputed Way easement to reach Diem Lot 5 would not constitute an overloading, as "it is unlikely that pedestrian traffic over the [plaintiffs'] lot will increase [merely because] the Disputed Way . . . is used for access to Diem Lot 5."

The defendant's proposed test has the advantage of being more flexible than the current bright-line rule. That flexibility, however, would come with significant costs. First, it requires altering a long-standing rule of "contract and property law . . . , in which reliance upon existing judicial precedent often influences individual action," see Papadopoulos v. Target Corp., 457 Mass. 368, 385 (2010), and in which "considerations favoring stare decisis are 'at their acme.'" Kimble v. Marvel Entertainment, LLC, 135 S. Ct. 2401, 2410 (2015), quoting Payne v. Tennessee, 501 U.S. 808, 828 (1991). While "this court is not barred from departing from previous pronouncements," we do so only where "the benefits of [the proposed rule] outweigh the values underlying stare decisis." Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, cert. denied, 543 U.S. 979 (2004).

Here, we are not persuaded that the defendant's proposed rule would provide such benefits. The type of detailed inquiry the defendant proposes "frequently present[s] difficult factual issues as to how broadly or narrowly the purpose [of the easement] should be defined, whether the proposed [expanded use] is . . . of the sort that should have been contemplated by the parties, how much damage or interference is likely to ensue, and whether it is reasonable." Restatement of Property, supra at

§ 4.10 comment c. Our bright-line rule in Murphy was formulated to avoid precisely this type of "difficult" litigation. See id.

It goes without saying, as the defendant notes, that "we do not reject desirable developments in the law [of easements] solely because such developments may result in disputes spurring litigation." M.P.M. Bldrs., LLC v. Dwyer, 442 Mass. 87, 93 (2004). We are not so much concerned, however, with the mere fact of litigation, as with the uncertainty that the prospect of such litigation would introduce in land ownership.[14] See id. at 92 (we disfavor "plac[ing] property interests in an uncertain status"); Nelson v. Blinn, 197 Mass. 279, 281 (1908), aff'd, 222 U.S. 1 (1911) (policy against subjecting "regular and lawful use and ownership of property" to "restrictions and uncertainty").

For example, a company might acquire a single, small parcel of land served by an easement, and then use that easement to provide access to a large commercial establishment located on multiple adjoining parcels, none of which was intended to benefit from that easement. See Murphy, 348 Mass. at 677-679

---

[14] In M.P.M. Bldrs., LLC v. Dwyer, 442 Mass. 87, 92 (2004), where we held that the owner of servient property unilaterally may relocate an easement, we rejected the argument that the ability to do so would create "uncertainty in property interests." We reasoned that the resulting uncertainty, if any, would affect only the rights of easement holders, who have "merely a right of way" and not "a possessory interest." Id. at 92-93. Here, by contrast, any uncertainty would affect the rights of the servient landowner, who does have a "possessory interest." Id.

(defendant used easement to serve discount store; "neither the store itself nor [its] parking area" were within lot benefited by easement).  In this scenario, a court operating under the current rule could permanently enjoin the company's expanded use of the easement without any need for further fact finding. Under the defendant's fact-intensive rule, however, a court could not issue an injunction without inquiry into whether the expanded use is "of the sort that should have been contemplated by the parties, how much damage or interference is likely to ensue, and whether it is reasonable."  See Restatement of Property, supra at § 4.10 comment c.  This inquiry would require a longer process of litigation than would the bright-line rule, would lead to a less predictable outcome, and might not be affordable to owners of small servient parcels who are litigating against defendants with the financial means to acquire and develop multiple parcels of land.[15]  See Perdido

---

[15] The present litigation is an example of how a bright-line rule may produce quicker results and greater certainty than a fact-intensive inquiry.  The plaintiffs moved for summary judgment in March, 2011, and, by the end of 2012, citing Murphy, a Land Court judge had issued a permanent injunction prohibiting use of Disputed Way to benefit Diem Lot 5.  The next stage of the litigation -- involving a fact-intensive inquiry whether opening Disputed Way to the public would unreasonably increase the burden on the Inn Property -- required three additional years of litigation, as well as a trial.  Even then, the judge's decision did not put an end to the dispute, as the judge stated that he might have to revisit his conclusion if the plaintiffs presented evidence that "public use" of the Disputed Way easement had "substantially increase[d]."

Place Condominium Owners Ass'n v. Bella Luna Condominium Owners Ass'n, 43 So. 3d 1201, 1210 (Ala. 2009) (Murdock, J., dissenting) (Perdido) (under fact-based inquiry, developer might acquire small parcel of land and use it to serve many adjoining ones; servient landowner at "some point," depending on circumstances, "may be able to argue that its property is being overburdened" [emphasis supplied]).

The defendant points, however, to cases from two other jurisdictions that had adopted a bright-line rule, but subsequently moved away from that rule in favor of a more fact-based analysis.  See Perdido, supra at 1206-1207 (easement properly used to benefit both lots on which condominium sits); Abington Ltd. Partnership v. Heublein, 246 Conn. 815, 829-232 (1998) (in certain circumstances, easement may serve after-acquired lot).  These cases do not stand for the proposition attributed to them.

In Perdido, supra at 1204, while a deed creating the easement at issue stated on its face that the easement was to apply only to one of two lots, the judge concluded that the easement properly could be used to benefit both lots because the "parties at th[e] time [the easement was created] contemplated that the easement would benefit" both.  Similarly, in Abington Ltd. Partnership, supra at 829, the Connecticut Supreme Court held that an easement could be used for the benefit of after-

acquired parcels, but only if the "intent of the parties when the easement was created" was that it would benefit such parcels.[16] This comports with our rule that the "terms and conditions under which an easement may be created and the manner of its exercise are within the control of the creating parties" (citation omitted).[17] See Patterson v. Paul, 448 Mass. 658, 665 (2007). See, e.g., Pion v. Dwight, 11 Mass. App. Ct. 406, 410 (1981) (easement intended to benefit multiple parcels). Here, by contrast, the judge found specifically that, at the time of its creation, the Disputed Way easement was not intended to benefit Diem Lot 5.

Further, we are not persuaded, as the defendant maintains, that "[c]urrent Massachusetts law creates a substantial

---

[16] See Reporter's Note, Restatement (Third) of Property: Servitudes § 4.11 (2000) ("Connecticut Supreme Court . . . favor[s] an inquiry into the intent of the parties" and, in particular, whether "the proposed use and likely development of the dominant estate [at the time the easement was created] include[d] the acquisition of additional property that would be served by the easement").

[17] The Appeals Court's decision in Bateman v. Board of Appeals of Georgetown, 56 Mass. App. Ct. 236 (2002), that a particular easement taken by eminent domain could be used for after-acquired property, is not to the contrary. As the court noted, while it was not clear whether the easement was intended to benefit after-acquired properties, the easement was taken by eminent domain, and the "principles of interpretation designed to give effect to the express or implied intent of parties contracting for or acquiring an interest in land . . . are, in general, inapplicable to eminent domain proceedings." Id. at 239. Here, by contrast, the easement was created by private conveyance, and the principle that the creators' intent governs is applicable.

impracticality" in circumstances such as these, and that it is inconsistent with our "public policy favoring socially productive use of land."  See Martin v. Simmons Props., LLC, 467 Mass. 1, 13 (2014).  As applied here, the traditional rule allows hikers to make use of both Disputed Way and Twenty Foot Way; it prevents them only from walking the two paths in a single loop.  While this may be an inconvenience, it does not amount to a "substantial impracticality."  In addition, the current rule will not necessarily prevent parties in the defendant's position from expanding their use of the easement insofar as they may attempt to "negotiate a result" with servient landowners.  See M.P.M. Bldrs., LLC, 442 Mass. at 94.

In sum, the bright-line rule articulated in Murphy provides owners of servient property with certainty regarding their possessory rights.  The benefits of this certainty outweigh the perceived advantages of a more flexible rule.

Judgment affirmed.