NOTICE:   Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-480

STEVEN J. GLADSTONE & others[1]

vs.

KATHLEEN M. DENIZARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Kathleen M. Denizard, owns oceanfront property in the town of Dartmouth and the plaintiffs, owners of nearby oceanfront, beachfront, or inland property, each claim to have the right to use the "beach" portion of Denizard's property for general beach purposes.[2]  Denizard contends that several of the plaintiffs' properties lost their rights over her beach due

_____

[1] Kim Daigle Gladstone, Jeri L. Gilling, John Seymour, Lynn Seymour, Mary Elisabeth Swerz and Kinnaird Howland, trustees of the Sherman Family Realty Trust, Robert Tabors, and Richard D. Tabors and Patton O. Tabors, trustees of the TQuad Realty Trust.

[2] The plaintiffs also claim the right of access to the beach by a ten-foot wide right of way along the northern side of Denizard's property; Denizard no longer denies that the plaintiffs have that right -- with the exception that Denizard denies that the trustees of the TQuad Realty Trust have that right.  We will address that argument below.

to the doctrine of merger and the longstanding "bright-line" rule prohibiting "the owner of the dominant estate [from using an easement] to pass to or from other land adjacent to or beyond that to which the easement is appurtenant" (citation omitted). Taylor v. Martha's Vineyard Land Bank Comm'n, 475 Mass. 682, 686 (2016). As to other plaintiffs, Denizard admits they have easements, but challenges their use of her beach as exceeding the scope of their easements. On cross motions for summary judgment on the plaintiffs' complaint seeking a declaratory judgment and injunctive relief, a judge of the Land Court declared the rights of the parties and Denizard now appeals from the judgment and from the denial of her motion for reconsideration.[3] Our reasoning differs in some respects from that of the Land Court judge and we affirm in part and vacate in part and remand for modification of the easement for the inland property owners -- Steven J. Gladstone, Kim Daigle Gladstone, Jeri L. Gilling, and Robert Tabors.

Background. The development of the plaintiffs' properties may be traced to 1885, when Emily Sweet acquired a large parcel including all the land at issue, which fronted on Buzzards Bay along the parcel's eastern boundary. In 1889, Sweet divided the

---

[3] Denizard does not raise any separate arguments regarding the denial of her motion for reconsideration, and we therefore do not address it further.

large parcel into four smaller parcels -- three roughly rectangular adjacent parcels that proceed north to south and are labeled nonconsecutively on the attached decision sketch[4] as parcels 318, 319, and 317, and a fourth parcel, the "beach parcel," which Sweet referred to as the "farm shore."  While retaining the fee in the farm shore,[5] Sweet transferred parcel 318 to Henry, Ephraim, and Foster Dennis,[6] and she transferred parcel 319 to Louis Richardson.  Importantly for our purposes, in both deeds she expressly included the right to "use the farm shore for boating[,] bathing [and] fishing purposes."[7]

---

[4] The decision sketch was attached to the Land Court decision and neither party suggests that it does not accurately depict the location of the various lots.  Accordingly, we attach the sketch depicting the various parcels, Gosnold Alley, and other features as an appendix to assist the reader.  We note, however, that some of the affidavits submitted suggest that there has been erosion of the beach area that may not be reflected on the sketch.

[5] The parties agree that Sweet "retained ownership of the land to the east of [parcels 317, 318 and 319] lying between the parcels and the sea ('the Farm Shore')," and they agree that the farm shore is accurately shown on the decision sketch.

[6] Because of the common surname, we refer to these people frequently by their first names.

[7] Sweet transferred parcel 317 to Henry and Foster "[t]ogether with the right to the grantees, their heirs & assigns of using the beach lying between the granted premises and the waters of Buzzards Bay for all purposes except the taking of seaweed . . . ."  Because none of the parties' properties derive from parcel 317, we do not address it further.

3

Sweet retained the farm shore parcel until 1891 when she conveyed it to Ephraim Dennis, who conveyed it to Henry on November 8, 1909. On November 8, 1909, the same day that Henry acquired all of the farm shore, he and Ephraim conveyed a portion of the northern section of the farm shore to William Hill, "subject to the common law rights of the public and to rights in certain persons," including the owners of Henry Dennis' properties, Louis Richardson's property, George Batchelor's property, and Walter and Maude Taber's property, among others.[8] The division line for this "north farm shore" portion from the rest of the farm shore is shown on the decision sketch as just north of Batchelor's parcel (now owned by the Seymours). What the parties refer to as the "south farm shore" is south of that line and the "north farm shore" is north of that line. Denizard's beach is in the "south farm shore" portion. In November 1910, Henry transferred the remainder of parcel 318 and the south farm shore to Catherine Dennis and Lucy Dudley.

The parties agree that parcel 319 never entered common ownership with any part of the Denizard property and that the Sweet easement rights continue to benefit all property deriving

---

[8] We note that the plaintiffs Robert, Richard, and Patton have the last name "Tabors," which is different from the last name "Taber." The Tabers and the Tabors are unrelated for purposes of this decision.

4

from parcel 319.  As noted above, in November 1909, however, when Henry owned a large portion of parcel 318, including portions of several of the plaintiffs' interior lots, the Shermans' beachfront lot and interior lot, and Denizard's lot, he took title to the south farm shore.  This is significant because Denizard argues that the Sweet easement over the farm shore benefitting parcel 318 merged by operation of law when Henry took title to both the remainder of parcel 318 and the south farm shore.  And, because several of the parties' interior lots are comprised of property from the merged portion of parcel 318 and portions of parcel 319, and even though the parcel 319 portion of the lots do not suffer from a merger issue, she contends that the easements benefitting the parcel 319 portion of those lots are overloaded[9] by the combination of land from parcel 319 with land from parcel 318, and thus the owners may not exercise those easement rights.

1.  The parties' properties.  a.  The beachfront properties.  As shown on the decision sketch, four beachfront lots deriving from parcel 318 are separated from interior lots by "Gosnold Alley," which runs north to south over parcels 318

_____

[9] The term "overload" applies when an appurtenant easement is used to serve land other than the original dominant estate. Taylor v. Martha's Vineyard Land Bank Comm'n, 475 Mass. 682, 685 n.11 (2016).

5

and 319.  These are labelled (1) "Seymour formerly 1905 Batchelor parcel" along with "1902 Batchelor Parcel"; (2) "Denizard formerly Clark[10]"; (3) "Tabors formerly Knowles"; and (4) "Sherman."

Proceeding from north to south, the plaintiffs John and Lynn Seymour's property is directly north of a ten-foot right of way that separates it from the Denizard property.  The Seymour property is comprised of portions of parcels transferred in 1902, 1905, and 1909 to their predecessor, Batchelor, before any potential merger issue arose by virtue of Henry's ownership of the farm shore.  The 1902 deed included a piece of the farm shore and the parties agree that "[a] portion of the 1902 Batchelor Parcel now comprises part of the Seymour Waterfront property."  Each of the parcels transferred to Batchelor had rights to use the ten-foot right of way and the farm shore, including the Denizard beach, for boating, bathing, and fishing, either by virtue of the Sweet easement or an express easement in the relevant deed.[11]

---

[10] The spelling of Denizard's predecessor, Frederick Clark, is inconsistent in the record between Clark and Clarke; we adopt the spelling in the original deed of Denizard's property to Frederick L. Clark.

[11] While the 1905 deed did not expressly include beach rights, the rights deriving from Sweet were still in effect. See G. L. c. 183, § 15.  See also Anzalone v. Metropolitan Dist. Comm'n, 257 Mass. 32, 36 (1926) (easement not limited in scope by its terms attaches to every portion of tract and to owner of

6

The Denizard property is south of the Seymour property. It was conveyed to Denizard's predecessor, Frederick Clark, by Lucy Dudley, successor to Henry Dennis, in 1914, at a time when Dudley also owned the vast majority of the farm shore, aside from the section north of the Denizard property which had been previously conveyed to the Seymours' predecessor, Batchelor, and portions north of the Batchelor property -- the north farm shore -- that had been conveyed in 1909 to William Hill, subject to Henry's easement. The deed from Dudley to Clark included the beach to the shoreline. The deed purported to transfer the property "free from all of incumbrances" and does not contain an express reservation of an easement for Dudley's remaining land. Of note, however, is that Dudley retained the fee in or an easement right to use all other sections of the beach -- both the north farm shore and the south farm shore. In fact, a small portion of the "south farm shore" is north of Denizard's beach and a larger portion of it is south of Denizard's beach.

South of the Denizard property is the Tabor trustees' beachfront property (the "Tabors formerly Knowles" lot on the

---

each lot divided from tract). Further, in 1909, Henry transferred a nearby interior lot to Walter and Maude Taber, "together with the use of the shore" north of the 319 parcel for boating, bathing, and fishing, reserving the right of boating, bathing, and fishing on the farm shore. The Seymours now own this lot also.

7

decision sketch). Ephraim and Henry Dennis originally transferred that lot to Walter I. Knowles on September 7, 1899, together with a lot across the alley that derives from parcel 318, with "the privilege of using the beach in front of the lot first above described [the beachfront lot] in common with others, for boating bathing and fishing." At that time, Ephraim owned the beach and Ephraim and Henry owned parcel 318. So far as the record reveals, there was nothing to prevent the easement that Sweet granted to parcel 318 from passing appurtenant to the two lots that Ephrain and Henry Dennis deeded to Knowles. See G. L. c. 183, § 15; Anzalone v. Metropolitan Dist. Comm'n, 257 Mass. 32, 36 (1926).

South of the Tabors' property is the Sherman property; it too is comprised of a beachfront lot and an adjacent inland lot -- all deriving from parcel 318. Henry took title to this property in 1899; in 1909, when Henry took title to the south farm shore, he owned both the south farm shore and all of the Sherman property, and Dudley succeeded to his interest.

b. The inland lots. The Gladstones, Gilling, and Robert Tabors own interior lots that are west of Gosnold Alley, run north to south, and are comprised of property from both parcels 318 and 319. The interior lots were created by a 1965 subdivision plan of land acquired by Philip and Bernadette Hemingway together with "any right to the use of the shore

8

appurtenant to it."  The Tabors, as trustees, and the Shermans each own the beachfront lots noted above and adjacent interior lots derived from parcel 318.

Discussion.  Our discussion is limited to the parties' rights over the Denizard property and Denizard's contention that the Sweet easements had been extinguished by the doctrine of merger for the portions of parcel 318 held by Henry at the same time he owned most of the south farm shore and had rights to use all of the south farm shore.  We review the judge's decision de novo.  See Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 517 (2011).

At the outset, we note that Denizard, in her brief, makes several concessions.  She admits that in 1909, when Dudley conveyed the Denizard lot to Clark, the use of the ten-foot right of way abutting the northerly boundary of the Denizard property was an "apparent and obvious use" and "reasonably necessary" for gaining access to the north farm shore -- that it "had been established for at least 4 years and allowed for inland portions of [parcel 318] then owned by Henry Dennis . . . to access the [f]arm [s]hore."  Thus, Denizard in essence concedes that Dudley reserved an implied easement for the ten-foot right of way for access to the north farm shore for all of the plaintiffs -- but not for the south farm shore still owned by Dudley.  She also does not challenge the judge's "conclusion"

9

that the Sherman's property "has an implied easement over the Denizard Beach due to the fact that Sherman's property contains beachfront that was formerly part of the Farm Shore." The judge's decision, however, concludes only that the Sherman property "is benefitted by an implied easement to pass and repass over the South Farm Shore, including the beachfront portion of the Denizard property." Sherman did not file a notice of appeal on this issue. Finally, Denizard concedes that the Seymours have rights to use Denizard's beach for beach purposes. Thus, other than to address Denizard's "scope" argument, we need not address further the rights of the Seymours or any of the parties' right to use the ten-foot right of way for access to the north farm shore.

We turn to the plaintiffs' remaining claims.

1. Premerger transfers. Both the Seymours and the Tabors own properties that were transferred to their predecessors before Henry Dennis took title to both the south farm shore and the remainder of parcel 318. The Seymours' predecessors acquired express easements over Denizard's beach and over the ten-foot right of way. Although Denizard does not challenge the Seymour's right to boat, fish, and bathe on her beach, she contends that the scope of the easement granted by the judge is overly broad and the judge's conclusion that the Seymours' rights include "all customary beach uses incidental [to boating,

10

bathing, and fishing], including without limitation sunbathing, sitting on blankets or chairs, picnicking, and playing beach games" overburdens[12] the easement. Denizard makes only vague assertions that the various affidavits submitted in the case -- none of which shed light on the intentions of Sweet -- suggest that Bachelor has overburdened the easement, but does not point to any specific facts. Consequently, we discern no error in the judge's reasonable interpretation of the Seymours' express easement.

As for the Tabor trustees' beachfront property (which includes a parcel west of Gosnold Alley but comprised only of property from parcel 318), although their original predecessor, Knowles, did not receive an express easement over Denizard's beach, the Sweet easement was still appurtenant to the property in 1899. "An easement is to be interpreted as available for use by the whole of the dominant tenement existing at the time of its creation," Pion v. Dwight, 11 Mass. App. Ct. 406, 410 (1981), and "[u]nless otherwise stated in the deed, 'rights and appurtenant easements pass by grant without specific mention.'" Perry v. Nemira, 91 Mass. App. Ct. 12, 16 (2017), quoting Cheever v. Graves, 32 Mass. App. Ct. 601, 606 (1992).

_____

[12] The term "overburden" describes "use of an easement for a purpose different from that intended in the creation of the easement" (citation omitted). Taylor, 475 Mass. at 685 n.11.

11

Denizard argues that because the deed to the Tabors trustees' predecessor, Knowles, contained an express easement over the beach in front of the Knowles lot, the parties must have intended to "relocate" Knowles' easement rights deriving from the Sweet deed. While we agree with Denizard that in rejecting this argument the judge erred by suggesting that Walter Knowles and Edward Knowles were the same person, that error does not change the outcome as we do not find anything inconsistent about granting an express easement over the beach in front of Walter Knowles' property and also finding that the easement rights over all of the beach set forth in the Sweet deed were still operative. The easements, though duplicative in part, are not inconsistent, and Denizard points to no affirmative evidence of the parties' intent to extinguish the Sweet easement appurtenant to the property. Contrast Proulx v. D'Urso, 60 Mass. App. Ct. 701, 705 (2004) (easement relocated when parties acquiesced in use of alternative easement in lieu of original easement for over decade).

2. The Gladstone, Gilling, and Tabors inland parcels and the merger doctrine. Although it is clear that the original grantor, Emily Sweet, took steps to ensure that all of parcels 318 and 319 would have easement rights in and over the farm shore -- including what became the Gladstone, Gilling and Robert Tabors parcels -- the subsequent development of parcel 318 and

12

the farm shore caused some portions of parcel 318 and the farm shore to come into common ownership. "The [merger] doctrine requires that [an easement] terminate[] 'when all the benefits and burdens come into a single ownership'" because "[w]hen the dominant and servient estates come into common ownership there is no practical need for the [easement's] continued existence, as the owner already has 'the full and unlimited right and power to make any and every possible use of the land'" (citations omitted). Busalacchi v. McCabe, 71 Mass. App. Ct. 493, 497-498 (2008). "Although a subsequent conveyance of one of the commonly held parcels will not automatically revive the extinguished easement, the doctrine in no way precludes the common owner from recreating precisely the same easement by express reservation." Id. at 498. Extinguished easements, however, "must be created anew by express grant, by reservation, or by implication" (citation omitted). Williams Bros. Inc. of Marshfield v. Peck, 81 Mass. App. Ct. 682, 685 (2012).

Accepting that by late 1909, Henry owned the inland portions of parcel 318, the Denizard lot, the Sherman lots, and the south farm shore, the preexisting easement from Sweet had been extinguished as to those lots under the doctrine of merger. To be clear, Henry, as owner of both the south farm shore and the inland properties, had sufficient title to create the easements anew, but he never did, and the original easements

13

from Sweet were extinguished. Dudley took what title Henry had. Dudley's deed to Clark did not include an express reservation in the Denizard beach, thus easement rights must have arisen, if at all, by implication. See Williams Bros. Inc. of Marshfield, 81 Mass. App. Ct. at 685. Consequently, the question is whether when Dudley transferred the Denizard lot -- including the Denizard beach to Clark -- an easement by implication with respect to the Denizard Beach, which had been part of the south farm shore, arose for the benefit of Dudley's remaining land.

Whether by grant or by reservation, implied easements "do not arise out of necessity alone." Perodeau v. O'Connor, 336 Mass. 472, 474 (1957), quoting Dale v. Bedal, 305 Mass. 102, 103 (1940). Rather, they "must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." Dale, supra at 103. Because "a deed is . . . construed most strongly against the grantor," it may be "more difficult to imply an easement by reservation for the grantor's benefit than an easement by grant for the grantee's benefit." Id.

Only "reasonable necessity" is required. Perodeau, 336 Mass. at 474. "The burden of proving such intent lies with the

14

party claiming the easement, here the plaintiffs." Kane v. Vanzura, 78 Mass. App. Ct. 749, 755 (2011). "The controlling question is whether the circumstances of the severance demonstrate that the parties intended that the owner of one of the resulting parcels be able to make some use of the other parcel even though no express easement was recorded." Lavoie v. McRae, 102 Mass. App. Ct. 14, 19 (2022). That intent "generally will be found only where the parties seeking to benefit from the easement can prove that it is 'reasonably necessary' for their use and enjoyment of their land" (citation omitted). Id. at 19-20.

Denizard asserts that because the Dudley deed stated that the property was transferred "free of incumbrances," there can be no implied easement for Dudley's remaining land. We place little weight on the deed's assertion, however, because at the time of the Dudley deed to Clark, Denizard's predecessor, several property owners from the original Sweet parcel had rights in and over the Denizard beach for boating, bathing, and fishing purposes. They included all of parcel 319, and the Seymours' predecessor, Batchelor. In addition, William Hill, who owned property north of the Seymours' lot and the north farm shore, had acquired rights to use the Denizard beach for boating, bathing, and fishing in 1909, including the right to grant the same rights to purchasers of his ten plus acres. All

15

of these appurtenant rights were a matter of record, and parties to a deed are charged with knowledge available from inspection of the records of the registry of deeds.  See Barnes v. Boardman, 152 Mass. 391, 396 (1890).  Thus, when the Dudley deed provided that the Denizard property was granted "free of incumbrances" that did not extinguish the rights of others to use the beach in front of the Denizard property and does not preclude us from finding an implied easement for the benefit of Dudley's remaining property.

Next, we must emphasize that Denizard has admitted that the use of the ten-foot right of way abutting the northerly boundary of the Denizard property was an "apparent and obvious use" and "reasonably necessary" and "that it had been established for at least 4 years" at the time of the Dudley to Clark deed in 1914, "and allowed for inland portions of [parcel 318] then owned by Henry Dennis . . . to access the [f]arm [s]hore."  Although she contends the right of way was used for access to the north farm shore, we discern nothing in the record suggesting that at the time of the deed, Dudley and her predecessor, Henry, had limited their use of the farm shore to the north farm shore.  Given that Denizard has conceded the open and obvious use of the ten-foot right of way, on this record, we cannot conclude that Dudley intended to give up her access to the rest of the beach she owned south of Denizard's property.  Even if she could have

16

access to the beach generally by using the ten-foot wide right of way and turning north of the Denizard beach or access to the beach south of the Denizard beach via the Sherman lot, it is unreasonable to conclude that Dudley intended to cut off her ability to traverse the entire beach when she retained rights in or title to all of the south farm shore and the north farm shore other than the Denizard beach. We conclude, therefore, that an easement over the Denizard beach and the ten-foot right of way was reasonably necessary to enable Dudley to fully enjoy the rest of her property. When Dudley divided parcel 318, the rights over Denizard's property passed to the divided portion without having to be stated. Indeed, Denizard concedes that the internal properties retain the rights with respect to the north farm shore. "Unless otherwise stated in the deed, 'rights and appurtenant easements pass by grant without specific mention.'" Perry, 91 Mass. App. Ct. at 16, quoting Cheever, 32 Mass. App. Ct. at 606. So far as the record reveals no one with a fee interest in the portion of the south farm shore south of Denizard's beach appears to have challenged the inland lot owners rights, whether by virtue of permission or easement rights, to use the south farm shore south of the Denizard property and thus, we need not entertain the suggestion that any easement over the Denizard property is obsolete or unnecessary.

17

We note, however, that in Cheever, 32 Mass. App. Ct. at 608-609, we concluded that a plaintiff made no showing of reasonable necessity to demonstrate an intent to reserve an easement by implication for beach rights where there was no showing that the lot had no other waterfront access. Here, Dudley did have other waterfront access. However, as already stated, here Dudley retained rights in or title to all of the south farm shore other than the Denizard beach. It defies logic to conclude that Dudley intended to carve out a section of the beach that would disrupt her enjoyment of all of the remaining beach that she owned. In these circumstances, we conclude that she intended to reserve a right to pass and repass over the Denizard beach. That said, there is no indication that using it for "all beach purposes" was reasonably necessary where she transferred the fee and could enjoy other areas of the beach for beach purposes. Thus, we limit the reserved easement by implication to passing and repassing only -- in addition to the public's colonial rights. See Butler v. Attorney General, 195 Mass. 79, 84 (1907) (colonial ordinance of 1631-1647 grants public right of navigation, fishing, fowling, and passing freely over and through water between high and low water marks).[13]

---

[13] Similarly, we note that Denizard admits in her brief that the inland lot owners continue to have rights in some portions of the beach south of Denizard's beach as well as the north farm shore.

18

Because we conclude that Dudley reserved an easement by implication over the Denizard beach, including property from parcel 318 in the Gladstones', Gilling's, and Robert Tabors' interior lots does not overload the parcel 319 easement to the extent that they may pass and repass over the Denizard beach to reach other sections of the beach over which they have beach rights. This is the same result the judge reached for the Sherman property -- that it retains the right to pass and repass over the Denizard beach and the ten-foot right of way. It would overload the easement, however, to allow the Shermans, the Gladstones, Gilling, and Robert Tabors to use the Denizard beach for all beach activities. Thus, we remand the case to the Land Court to modify the scope of the easement for the interior lots comprised of property from parcels 318 and 319 owned by the Gladstones, Gillings, and Tabors consistent with this decision.[14]

---

[14] The judge found that the doctrine of merger did not apply because it was not the intent of the merger doctrine to "deprive the portions of those properties within the 319 [p]arcel of their deeded rights to full use of the [f]arm [s]hore, even though their rights had not been lost through merger." However, it is not the doctrine of merger that causes the property deriving from parcel 319 to lose easement rights to the full use of the Denizard beach. Rather, the doctrine of overloading came into play because of the much later decision to combine portions of parcel 319 with property from parcel 318 that had lost certain easement rights through merger, ultimately leaving that property with only the right to pass and repass, and developing them as single lots with property from both parcels 318 and 319. The prohibition against overloading an easement by extending it to after-acquired land has been firmly established for centuries. See e.g. Davenport v. Lamson, 21 Pick. 72, 74 (1838)

3. Remaining counterclaims. Denizard argues that her counterclaims were not completely addressed and that the Seymours and Tabors have "overburdened" their easement to use the Denizard beach. Specifically, Denizard asserts that the judge erred in broadly concluding that the easement authorized "all customary beach uses incidental [to boating, bathing, and fishing], including without limitation sunbathing, sitting on blankets or chairs, picnicking, and playing beach games." We discern no error in this aspect of the judge's decision; the Seymours and the Tabors trustees' beachfront lot, and the adjacent lot purchased with the beachfront lot, enjoy broad rights deriving from admitted express or implied easement rights. Nothing in the affidavits of record raise a genuine issue of material fact on the scope of those easements. Again, our decision does limit the Shermans' lot and the Gladstones', Gilling's, and Richard Tabors' interior lots to passing and repassing over the Denizard lot.

In addition, it appears that the plaintiffs also claimed easements by prescription. It is unclear to us whether these

_____

(right of way benefitting three-acre lot cannot be used for access to nine-acre lot which lay beyond three-acre lot). That premerger, both lots enjoyed the Sweet easement rights, does not assist the plaintiffs here. Thus, the portions of lots 319 and 318 that were combined to create the three interior lots each retained the right to pass and repass over the Denizard beach (as they retained the rights to use the north farm shore); those therefore are the rights the three interior lots retain.

20

claims were waived. To the extent that they were not waived, the Shermans, Gladstones, Gilling, and Robert Tabors may pursue those claims on remand, though they will bear the burden to show "that [their] use of the disputed beach area was sufficiently open and notorious as to entitle [them] to the benefit of the presumption that [Denizard or her predecessors] knew that . . . use of the area was being made under a claim of right." Houghton v. Johnson, 71 Mass. App. Ct. 825, 840 (2008).

Conclusion. We affirm the judgment in part and vacate in part and remand for further orders and proceedings consistent with this opinion.[15] Specifically, the Shermans, Gladstones, Gilling, and Robert Tabors properties enjoy an implied easement to pass and repass over the Denizard beach and the ten-foot right of way to reach both the north farm shore and the south farm shore. The Seymours' beachfront property and the property of Richard D. Tabors and Patton O. Tabors, as trustees of the TQuad Realty Trust, enjoy easement rights over the ten-foot right of way to reach the north farm shore and the south farm shore, and the right to use the Denizard beach for boating, bathing, and fishing and all customary beach uses incidental thereto, including without limitation sunbathing, sitting on

---

[15] Denizard's request for attorney's fees and costs is denied.

21

blankets or chairs, picnicking, and playing beach games. Denizard shall be enjoined from interfering with the plaintiffs' rights as declared. The Land Court shall determine whether any of the plaintiffs have acquired additional prescriptive easement rights if such claims have not been waived. The order denying the motion for reconsideration is affirmed.

<u>So ordered</u>.

By the Court (Rubin, Henry & Wood, JJ.[16]),

Clerk

Entered: June 15, 2026.

---

[16] The panelists are listed in order of seniority.

## APPENDIX
### DECISION SKETCH



N

W E

SHORE

Line between
North & South
Farm Shore

1902
Batchelor
Parcel

Seymour
formerly
1905 Batchelor
parcel

Gladstone

MEADOWS

Gilling

318
Parcel

Seymour
formerly
Taber

GOSNOLD ALLEY

ROAD

Denizard
formerly
Clark

-10' R.O.W.

Tabors
formerly
Knowles

Tabors

319
Parcel

Sherman

Sherman

B U Z Z A R D S   B A Y

317
Parcel

23